# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JANE DOES 1-22,

      Plaintiffs,

      v.

BOARD OF EDUCATION OF PRINCE
GEORGE'S COUNTY,
DR. MONICA GOLDSON,
*in her official capacity,*
REX BARRETT,
*individually and in his official capacity,*
CESAR PACHECO,
*individually and in his official capacity,*
TIMOTHY GOVER,
*individually and in his official capacity,* and
DR. WESLEY WATTS, JR.,
*individually and in his official capacity,*

      Defendants.

Civil Action No. TDC-19-2580

---

## MEMORANDUM OPINION

Plaintiffs Jane Does 1-22, former students at Charles Herbert Flowers High School ("Flowers High School"), a public high school within the Prince George's County Public Schools ("PGCPS") in Prince George's County, Maryland, have filed this civil action alleging that they were improperly subjected to video recording at school without their knowledge or consent while they were dressing for Pom and Dance Team activities. Plaintiffs allege violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 (2018), the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and Article 24 of the Maryland Declaration of Rights, as well as various state law tort claims. Defendant Board of Education of Prince George's County ("the BOE") has filed an Answer to the Amended Complaint. The

remaining defendants, Dr. Monica Goldson, Rex Barrett, Cesar Pacheco, Timothy Glover, and Dr. Wesley Watts, Jr. (collectively, the "Individual Defendants") have filed a Motion to Dismiss, which is fully briefed.  Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6.  For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The allegations in the Amended Complaint, which the Court must accept as true for purposes of the pending Motion, include the following facts.

During both the 2016-2017 and 2017-2018 school years, Plaintiffs were students at Flowers High School and were members of the school-sanctioned and funded Flowers High School Pom and Dance Team ("the Pom and Dance Team").  During this time period, Plaintiffs were minor children between the ages of 14 and 17.  The faculty co-sponsor of the Pom and Dance Team was Donna Bussey, the secretary to the principal of Flowers High School.  As the faculty co-sponsor, Bussey was responsible for the well-being, whereabouts, and safety of the Pom and Dance Team members.  Typically, Bussey met with the team in the principal's office before performances and competitions.  After these meetings, team members changed out of their school clothes and into their dance uniforms in the principal's office before walking together to the location of the performance.  The Pom and Dance Team changed into their dance uniforms in the principal's office because both of the school's locker rooms were typically in use by other athletic teams, it was close enough to Bussey that she could provide supervision, it was large enough to accommodate the entire team, and it was believed to be a safe and private space.

On or about July 29, 2016, Defendant Rex Barrett, the Deputy Director of the PGCPS Department of Security Services; Defendant Cesar Pacheco, the PGCPS Assistant Director of

Security Services; and Defendant Captain Timothy Gover, the PGCPS Deputy Director for Safety and Security Services, authorized and ordered the installation of a hidden camera in the Flowers High School principal's office. The hidden camera was installed by a PGCPS employee at the direction of Defendant Dr. Wesley Watts, Jr., the PGCPS Chief Information and Technology Officer. The camera was disguised as a smoke detector. There were no signs or notices placed in or near the principal's office to notify or warn individuals that they would be subject to video recording when they were in the principal's office.

At the time of installation, the PGCPS employee labeled the hidden camera's IP address as "Friendly" to conceal the identity of the camera in the event that it was discovered. Am. Compl. ¶ 36, ECF No. 37. Furthermore, despite its placement in the principal's office, the video feed for the hidden camera was intentionally mislabeled within the school security system as "Main Lobby." *Id.* ¶ 42. Because the hidden camera was connected to the school security system, there was live transmission of the video feed and also automatic recording of the contents of the video feed. The hidden camera's video footage could be accessed by anyone using or viewing the school security system, both onsite and offsite.

On September 7, 2016, Plaintiffs met with Bussey in the principal's office before the team's first performance of the year and then remained in the office as they changed out of their school clothes and into their dance uniforms. In doing so, Plaintiffs were recorded on the hidden camera in "various stages of undress that exposed their underwear as well as their breasts." *Id.* ¶ 39. Over the course of the 2016-2017 school year, Plaintiffs were recorded in various stages of undress on at least 28 additional occasions. They were similarly recorded at various times throughout the 2017-2018 school year. These recordings were all made without the knowledge or

3

consent of Plaintiffs or their parents or guardians.   Throughout this time period, neither Bussey nor other Flowers High School staff were made aware of the existence of the hidden camera.

On or about April 13, 2018, an assistant principal at Flowers High School discovered the video feed connected to the hidden camera.  The assistant principal immediately reported the hidden camera to the head principal and the resident principal.  Upon further investigation, the principals found that almost two years of video footage from the hidden camera remained stored, even though video footage from other cameras at the school was automatically deleted after a 30-day period.  The same day, Gover instructed a technician to go to Flowers High School, remove the hidden camera, and collect the stored recordings.  Initially, the head principal denied the technician access to the camera until additional information could be obtained about how and why the camera was installed.

On April 16, 2018, two principals from Flowers High School, three employees from the PGCPS Department of Information and Technology, and three members of the Prince George's County Police Department ("PGCPD") attended a meeting to discuss the hidden camera.  After the meeting, the camera and recorder were removed and turned over to the PGCPD for further investigation.  The same day, PGCPS held a press conference at which it revealed that the hidden camera had been found.  Flowers High School students and parents were then notified.  Plaintiffs have alleged that Defendants, as well as PGCPS security personnel assigned to Flowers High School, had actual knowledge that the hidden camera in the principal's office was recording Plaintiffs and their fellow Pom and Dance Team members in various stages of undress, and that the video feed was "accessible to anyone accessing or using" the school's security system, whether on school grounds or not, but that despite this knowledge, Defendants "failed to take any corrective measures" to remove the hidden camera and the video feed or to protect these underaged, female

4

students from being recorded. *Id.* ¶¶ 55, 58.    Plaintiffs also contend that the only reason for recording them in various stages of undress was a sexual motivation.

Upon learning about the hidden camera, Plaintiffs became "incredibly anxious" about what recordings existed and who had seen them. *Id.* ¶ 70. Plaintiffs feel "objectified" and "violated on a sexual level" because they were apparently watched by school officials while they were undressed. *Id.* ¶ 70.    Plaintiffs also assert that they have suffered emotional and psychological trauma, including "great mental anguish and distress," from the potential that there are copies of the recordings that could be released to the public and thus cause them reputational harm. *Id.* ¶ 72. Plaintiffs continue to suffer from anxiety, stress, nightmares, difficulty in social interactions, embarrassment, and reputational damage.  As a result, some of Plaintiffs have sought mental health counseling from sexual assault services.

## II.    Procedural History

In the now operative Amended Complaint, filed on April 20, 2022, Plaintiffs named as Defendants (1) Prince George's County ("the County"); (2) the BOE (originally identified in the pleading as PGCPS); and (3) the Individual Defendants in both their official and individual capacities.  The Amended Complaint alleged the following causes of action, in the following numbered counts, against all Defendants except as otherwise specified:  (1) a violation of Title IX against the BOE, Barrett, Pacheco, Gover, and Watts; (2) a cause of action under 42 U.S.C. § 1983 alleging violations of the Fourth, Fifth, and Fourteenth Amendments to the Constitution against the BOE, Barrett, Pacheco, Gover, and Watts; (3) a § 1983 claim based on supervisory liability against the County; (4) a § 1983 claim based on municipal liability against the County; (5) a violation of the Fourth Amendment; (6) a violation of Article 24 of the Maryland Declaration of Rights; (7) invasion of privacy or intrusion upon seclusion; (8) gross negligence; (9) negligent

supervision against the County and the BOE; (10) *respondeat superior* against the County and the BOE; and (11) intentional infliction of emotional distress.

On May 27, 2022, the parties entered a Stipulation agreeing to the dismissal of all claims against Dr. Goldson in her individual capacity. On July 18, 2022, pursuant to a Motion to Dismiss, the Court dismissed all claims against the County. The BOE has filed an Answer. The Individual Defendants have filed the pending Motion to Dismiss.

## DISCUSSION

In their Motion, the Individual Defendants seek dismissal of the claims against them based on the following arguments: (1) as to Count 1, individuals, including school officials, may not be held liable for violations of Title IX; (2) as to Count 2, individuals may not be held liable in their official capacities under 42 U.S.C. § 1983; (3) as to Count 4, individuals may not be held liable under § 1983 based on a municipal custom or policy; (4) as to Counts 2, 5, 6, and 7, the claims of violations of the Fourth Amendment and Article 24 of the Maryland Declaration of Rights, as well as the claim for an invasion of privacy, all fail because Plaintiffs had no reasonable expectation of privacy when they were changing clothes in the principal's office; and (5) as to Counts 8 and 11, Plaintiffs have failed to state plausible claims of gross negligence and intentional infliction of emotional distress. The Individual Defendants also seek dismissal of any claim for punitive damages on the grounds that Plaintiffs have failed to allege sufficient facts to support such a claim.

Because Count 4 was asserted against the County only, and not against any of the Individual Defendants, the Court need not and will not address the argument relating to Count 4.

## I.    Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is

6

plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.    Title IX

In Count 1, Plaintiffs have alleged that the BOE, Barrett, Pacheco, Gover, and Watts have violated Title IX. The Individual Defendants argue that the Title IX claims against Barrett, Pacheco, Gover, and Watts must be dismissed because individuals may not be held liable for violations of Title IX. Under Title IX, "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX provides individuals subject to discrimination in violation of Title IX with a private right of action against the offending institution. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979). However, because school officials are not themselves recipients of federal funds, they may not be sued in their individual capacities for violations of Title IX. *Jennings v. Univ. of N. Carolina at Chapel Hill*, 444 F.3d 255, 268 n.9 (4th Cir. 2007). Thus, the Motion will be granted as to the Title IX claims against the Individual Defendants in their individual capacities.

As for the Title IX claims against the Individual Defendants in their official capacities, such claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Gray v. Laws*, 51 F.3d 426, 431 (4th Cir. 1995). The real "party in interest" is the government entity itself. *Id.* The Title IX claims against the Individual Defendants in their

7

official capacities are therefore the same as the Title IX claim against the BOE, to which the BOE

has filed an Answer and which remains in the case. *See, e.g., Edwards v. City of Goldsboro*, 178

F.3d 231, 244 n.8 (4th Cir. 1999) (finding that the plaintiff's § 1983 claims against city officials

in their official capacities must be treated as claims against the city itself).  Because the Title IX

claims against the Individual Defendants in their official capacities are duplicative of the Title IX

claim against the BOE, they will be dismissed.

## III.     Section 1983 Official Capacity Claims

The Individual Defendants argue that the § 1983 claims against them in their official

capacities should be dismissed because government officials may not be sued in their official

capacities under § 1983.  Under § 1983, individuals may sue in federal court "[e]very person" who,

under color of state law, deprives them of "any rights, privileges, or immunities secured by the

Constitution and laws" of the United States.  42 U.S.C. § 1983.  A state is not a "person" within

the meaning of § 1983 and is therefore not a proper defendant in a § 1983 case. *See Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 71 (1989).  In turn, because an official capacity suit against a

government official "is no different from a suit against the State itself," the claims against the

Individual Defendants in their official capacities are likewise not claims against a "person" under

§ 1983 and therefore must be dismissed. *See id.*  Thus, the Motion will be granted as to the § 1983

claims against the Individual Defendants in their official capacities.

## IV.     Reasonable Expectation of Privacy

The Individual Defendants seek dismissal of the claims in Counts 2, 5, 6, and 7 based on

the argument that Plaintiffs had no reasonable expectation of privacy when they changed clothes

in the principal's office. Because § 1983 is the avenue through which plaintiffs may allege

constitutional violations against state actors, Counts 2 and 5 are effectively the same claim:  a

8

claim under § 1983 that Defendants violated the Fourth Amendment by video recording them while they were changing. Count 6 is a claim that the same conduct violated Article 24 of the Maryland Declaration of Rights. Count 7 is a common law invasion of privacy or intrusion upon seclusion claim. *See Hollander v. Lubow*, 351 A.2d 421, 425 (Md. 1976) (holding that invasion of privacy includes "intrusion upon the seclusion of another," which occurs when someone "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person"); *Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC*, 187 A.3d 797, 808–09 (Md. Ct. Spec. App. 2018) (finding that the nonconsensual video surveillance of women while in a restaurant restroom constituted an intrusion upon seclusion).

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment protects students attending public schools, such as Plaintiffs, from unreasonable searches and seizures conducted by school officials. *See New Jersey v. T.L.O.*, 469 U.S. 325, 336–37 (1985); *DesRoches by DesRoches v. Caprio*, 156 F.3d 571, 574 (4th Cir. 1998). Unauthorized video recording by government officials constitutes a search within the meaning of the Fourth Amendment. *See United States v. Vankesteren*, 553 F.3d 286, 289–91 (4th Cir. 2009) (evaluating the reasonableness of the warrantless installation of a video camera as a search under the Fourth Amendment); *Norwood v. Bain*, 166 F.3d 243, 247–51 (4th Cir. 1999) (evaluating the reasonableness of video recording of individuals and searching bags at a roadside checkpoint as a search within the Fourth Amendment); *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 496 (6th Cir. 2008) (finding that "there can be no dispute" that videotaping students in a locker room constituted a search under the Fourth Amendment).

9

In *T.L.O.*, the United States Supreme Court established a two-part test for determining whether a search conducted by school personnel is reasonable. *T.L.O.*, 469 U.S. at 341. Courts must consider (1) whether the action was "justified at its inception"; and (2) whether the search "as actually conducted" was "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)); *see DesRoches by DesRoches*, 156 F.3d at 574–75. Here, the Individual Defendants have not offered, and the pleadings do not support, any justification for the installation of the hidden camera in the principal's office and the surreptitious video recording of Plaintiffs and their fellow Pom and Dance Team members while they were undressed. Specifically, the Individual Defendants have not alleged that the hidden camera was installed for a purpose identified in the case law as potentially permissible, such as to "turn up evidence" that a student had violated or was violating the "law or the rules of the school" or because students were in "imminent danger of injury on school premises." *T.L.O.*, 469 U.S. at 341–42; *Brannum*, 516 F.3d at 496. Even before considering Plaintiffs' allegation that the Individual Defendants' motivation was sexual in nature, there is no basis to conclude that the video recording was either justified at the inception or conducted in a manner reasonably related in scope to circumstances that would justify the search.

The Individual Defendants' only argument against the Fourth Amendment and related claims in Counts 2, 5, 6, and 7 is that Plaintiffs had no reasonable expectation of privacy when they were changing clothes in the principal's office. The protections of the Fourth Amendment attach only when the individual alleging a violation had a legitimate, reasonable expectation of privacy in the place searched or item seized. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *Doe v. Broderick*, 225 F.3d 440, 450 (4th Cir. 2000). Although the Supreme Court has stated that student athletes may have a lesser expectation of privacy than the general public or even other

students, it did so in the context of a claim that a drug test violated the Fourth Amendment and notably did not find that they had no reasonable expectation of privacy in a locker room, particularly on the issue of whether they could dress in a locker room free from video surveillance. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657–60 (1995). Rather, courts have held that students have a reasonable expectation of privacy while dressing in a school locker room that they will not be subjected to video recording because they "retain a significant privacy interest in their unclothed bodies." *See Brannum*, 516 F.3d at 496 (quoting *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 604 (6th Cir. 2008)). In *Brannum*, 34 middle school students asserted a § 1983 claim alleging that school officials violated the Fourth Amendment by installing and operating video surveillance equipment in the boys' and girls' locker rooms without their knowledge or consent and by viewing and retaining the recorded images. *Id.* at 491–92. Although the defendants asserted that the video surveillance was justified by school security needs, the court found that surveillance of school hallways and "other areas in which students mingle in the normal course of student life" was distinct from "camera surveillance of students dressing and undressing in the locker room" and concluded that the video recording was an unreasonable search that violated the Fourth Amendment. *Id.* at 498.

Here, although the principal's office was not a formal locker room, the allegations in the Amended Complaint support the reasonable inference that it was the functional equivalent of a locker room for the Pom and Dance Team. In particular, Plaintiffs have alleged facts demonstrating that the formal locker rooms were used by other athletic teams, that the faculty co-sponsor of the Pom and Dance Team held team meetings in the principal's office immediately before performances and competitions, and that she was aware that the team members used it as a locker room. By all outward appearances, it was a "safe and private" place. Am. Compl. ¶ 31.

11

Based on these facts, the Court concludes that Plaintiffs had a reasonable expectation of privacy while using the principal's office as a locker room, particularly in their own unclothed bodies. *See Brannum*, 516 F.3d at 496, 498. Accordingly, the Court rejects the Individual Defendants' argument that the claims in Counts 2, 5, 6, and 7 should be dismissed because Plaintiffs have not properly alleged facts demonstrating a reasonable expectation of privacy.

Although the Individual Defendants briefly reference qualified immunity and claim that the right at issue was not clearly established at the time of the relevant events, they provide no meaningful analysis of this defense. *See Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013) ("The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense.") In any event, the Court will not dismiss these claims on qualified immunity grounds because it finds that the Fourth Amendment right at issue was clearly established by a consensus of cases of persuasive authority. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982) ("If the law was clearly established, the immunity defense ordinarily should fail."); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538–39 (4th Cir. 2017) ("In conducting the clearly established analysis . . . we may look to a consensus of cases of persuasive authority from other jurisdictions . . .") (citations omitted). Specifically, multiple United States Courts of Appeals have found that the Fourth Amendment protects an individual's right to be free from observation or video surveillance by government officials while undressed in a private location on government property. *See Brannum*, 516 F.3d at 498 (holding that students had a reasonable expectation of privacy in not being video recorded while undressing in a school locker room); *Amzen v. Palmer*, 713 F.3d 369, 373 (8th Cir. 2013) (holding that video surveillance of individuals in single-occupancy bathrooms in a civil commitment unit violated a reasonable expectation of privacy under the Fourth Amendment); *United States v. Taketa*, 923 F.2d 665, 677 (9th Cir. 1991) (holding

that warrantless video surveillance of a government employee in a colleague's private office violated the Fourth Amendment). The Motion will therefore be denied as to the claims in Counts 2, 5, 6, and 7.

## V.    Gross Negligence

The Individual Defendants also argue that the Amended Complaint fails to state a claim for gross negligence. Under Maryland law, gross negligence is "something more than simple negligence, and likely more akin to reckless conduct." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (quoting *Taylor v. Harford Cnty. Dep't of Soc. Servs.*, 862 A.2d 1026, 1035 (Md. 2004)). It is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Id.* (quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)). An individual acts with gross negligence when that person "inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.* Under this standard, courts have found gross negligence adequately pleaded in cases in which a plaintiff has alleged that a defendant has displayed utter indifference or thoughtless disregard to the rights of others by failing to take certain actions to address clear warning signs so as to prevent the harm. *See, e.g., Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669–70 (D. Md. 2012).

Here, viewing the allegations in the light most favorable to Plaintiffs, the Court finds that they support the conclusion that the Individual Defendants were "utterly indifferent" to Plaintiffs' privacy rights when they arranged for or, at a minimum, were aware of but failed to end, the nonconsensual recording of Plaintiffs while undressed. *Barbre*, 935 A.2d at 717. By allowing for the filming of Plaintiffs in the outrageous manner alleged, the Individual Defendants arguably

13

acted as if Plaintiffs' privacy rights "did not exist." *Id.* Furthermore, as alleged in the Amended Complaint, the Individual Defendants knew that Plaintiffs were repeatedly being recorded while undressing and did nothing to remedy it for over a year. Failure to remedy such repeated misconduct provides a further basis to support a finding of gross negligence. *See Doe*, 888 F. Supp. 2d at 669–70. Notably, there is presently no basis upon which to conclude that any of the Individual Defendants, upon learning of the recording, took meaningful steps to determine who was responsible for it and to hold anyone accountable. *See id.* Plaintiffs have thus alleged sufficient facts to state a claim of gross negligence against the Individual Defendants.

## VI.   Intentional Infliction of Emotional Distress

Finally, the Individual Defendants contend that the Amended Complaint has not alleged sufficient facts to state a plausible claim of intentional infliction of emotional distress ("IIED"). To establish an IIED claim under Maryland law, a plaintiff must show (1) intentional or reckless conduct; (2) that the conduct was extreme and outrageous; (3) that the plaintiff suffered severe emotional distress; and (4) that there was a causal connection between the conduct and the emotional distress. *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).

The Amended Complaint sufficiently alleges an IIED claim. Conduct is extreme and outrageous if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Although this standard is high, it is patently obvious that repeatedly filming underaged students while undressed and without their knowledge is extreme and outrageous. The Amended Complaint also fairly alleges that the Individual Defendants acted intentionally or recklessly. Conduct is intentional or reckless if the tortfeasor desires to inflict severe emotional distress, knows that such distress is certain, or substantially certain, to result from his conduct, or

14

acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow. *Id.* at 614. Here, the allegations support the inference that, at a minimum, the Individual Defendants acted recklessly in deliberate disregard of the high probability that Plaintiffs, underaged female high school students, would experience emotional distress from the video recording of them as they were undressed. Plaintiffs have also plausibly alleged that the Individual Defendants' conduct caused their emotional distress. But for the actions of the Individual Defendants—authorizing the installation of the hidden camera and allowing it to continue to record for over a year—Plaintiffs would not have experienced the emotional distress alleged.

Finally, the Amended Complaint fairly alleges that the emotional distress was sufficiently severe. To successfully plead a claim for IIED, a plaintiff must allege facts demonstrating "severe" emotional distress, but the distress "need not produce total and emotional or physical disablement." *Figueiredo-Torres v. Nickel*, 584 A.2d 69, 76 (Md. 1991) (quoting *B.N. v. K.K.*, 538 A.2d 1175, 1181-82 Md. 1988)). Moreover, severity "must be measured in light of the outrageousness of the conduct." *Id.* Here, Plaintiffs allege that, upon learning about the recordings, they became "incredibly anxious about what recordings exist and who has seen them" and that they feel "objectified" and sexually "violated." Am. Compl. ¶ 70. They further allege that they continue to experience anxiety, stress, nightmares, difficulty in social interactions, embarrassment, and reputational damage that has required ongoing mental health counseling from those who provide services to victims of sexual assault. They also allege "great mental anguish and distress" from the potential that copies of the recordings could be released to the public and cause damage to their reputations. *Id.* ¶ 72. Based on these allegations, and given the nature of the conduct against Plaintiffs and the fact that they suffered the trauma at a vulnerable age, it is reasonable to infer that the emotional distress has been sufficiently severe to support an IIED

15

claim. *See Buettner-Hartsoe v. Balt. Lutheran High Sch. Assoc.*, No. RDB-20-3132, 2021 WL 2580385, at \*20–21 (D. Md. June 23, 2021) (finding that allegations that plaintiffs who had been subjected to sexual harassment at school experienced "anxiety and depression," had "undergone mental health treatment," and could not finish their education at the school were sufficient to plead an IIED claim against the school for failing to protect them from the harassment); *Reagan v. Rider*, 521 A.2d 1246, 1247, 1251 (Md. Ct. Spec. App. 1987) (finding that the plaintiff, who experienced embarrassment, humiliation, depression, weight gain, and difficulty forming normal personal and sexual relationships, and required multiple years of mental health treatment, had sufficiently alleged severe emotional distress in support of an IIED claim). The Motion to Dismiss will thus be denied as to the claim for IIED.

## VII.    Punitive Damages

Finally, the Individual Defendants argue that Plaintiffs may not pursue punitive damages as a remedy. Although they argue that such damages are unavailable for a Title IX claim, because the Court will grant the Motion as to the Title IX claims against the Individual Defendants, it need not address that issue.

Punitive damages for violations of § 1983 are available only when the defendant's conduct is shown to be motivated by "evil motive or intent" or when it involves "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Here, Plaintiffs have alleged that the Individual Defendants' motivation to install the hidden camera was sexual in nature, which is a fair inference under the circumstances and is sufficient to demonstrate evil motive or intent. At a minimum, Plaintiffs' allegations that the Individual Defendants arranged or allowed for the video recording of female students while undressed, and did so for over a year, certainly demonstrate reckless indifference to Plaintiffs' federally protected

rights under the Fourth Amendment. *See, e.g., Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015–16 (5th Cir. 2003) (finding that the defendant's conduct, which included an unauthorized strip search of the plaintiff, was sufficient to demonstrate reckless or callous indifference to the plaintiff's Fourth Amendment rights); *Hicks v. Ferreyra*, 582 F. Supp. 3d 269, 295–97 (D. Md. 2022) (finding that punitive damages were properly awarded based on evidence that the defendant conducted an unreasonable traffic stop in reckless disregard of the plaintiff's Fourth Amendment rights). Thus, the Motion will be denied as to the claim for punitive damages based on the § 1983 claims.

As for the state law claims, under Maryland law, punitive damages are available for "the most heinous" of intentional torts and are awarded to punish a defendant whose conduct is characterized by "actual malice," such as evil motive, intent to injure, or fraud. *Beall v. Holloway Johnson*, 130 A.3d 406, 419–20 (Md. 2016). Negligence alone, no matter how gross, wanton, or outrageous, will not satisfy the standard of actual malice. *Id.* Accordingly, the Motion will be granted as to punitive damages for the claim of gross negligence. However, as discussed above, Plaintiffs have sufficiently alleged that the Individual Defendants' conduct was characterized by evil motive and thus actual malice. *See Summit Loans, Inc. v. Pecola*, 288 A.2d 114, 118 (Md. 1972) (upholding a jury's award of punitive damages on a claim of invasion of privacy). Thus, at this stage, Plaintiffs will be permitted to seek punitive damages for the invasion of privacy and Article 24 claims.

## CONCLUSION

For the foregoing reasons, the Individual Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to the Title IX claims against the Individual Defendants and the § 1983 official capacity claims against the Individual Defendants. The Motion will be otherwise denied. A separate Order shall issue.

Date: December 6, 2022

THEODORE D. CHUANG
United States District Judge

18